**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| ACE MORTGAGE FUNDING, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | 1:06-cv-146-SEB-JMS |
| ) | |
| BRIAN BRADFORD, ) | |
| ACEMORTGAGE.COM INC., ) | |
| ) | |
| Defendants. ) | |

**Entry Discussing Motions for Partial Summary Judgment**

For the reasons explained in this Entry, the plaintiff's motion for partial summary judgment (dkt. #43) must be **granted in part and denied in part,** and the defendant's motion for partial summary judgment (dkt. #46) must be **denied.**

**I. Background**

This is an action brought by plaintiff Ace Mortgage Funding, LLC ("Ace Mortgage") against defendant Brian Bradford ("Bradford").[1] The plaintiff seeks resolution of two of its claims, breach of contract and unfair competition, through the entry of partial summary judgment. The defendant also seeks partial summary judgment in his favor.

"Summary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005) (quoting Rule 56(c) of the *Federal Rules of Civil Procedure*). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id*. "'It is well-settled that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.'" *Sanders v. Village of Dixmoor,* 178 F.3d 869, 870 (7th Cir. 1999) (quoting *Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir. 1983)).

---

[1]This action was also brought against defendant Acemortgage.com Inc. Non-attorney Bradford filed a single paragraph answer on behalf of that entity, alleging, in part, that that company no longer exists, it was dissolved and the company "never did anything." Corporations can appear in federal court only by counsel. *Mendenhall v. Goldsmith,* 59 F.3d 685, 687 n.1 (7th Cir. 1995). Acemortgage.com Inc. has not participated in this litigation, and the court considers the claim against that entity as having been abandoned by Ace Mortgage.

## II. Discussion

### A. Findings of Fact

On the basis of the pleadings and the expanded record, and specifically on the portions of that record which comply with the requirements of Rule 56(e), the following facts are undisputed for purposes of the motions for summary judgment. "'[W]hen acting on a motion for summary judgment, the judge [should] consider[ ] only evidence that would be admissible at trial.'" *McKinney v. Duplain,* 463 F.3d 679, 691 n.5 (7th Cir. 2006) (quoting *Gustovich v. AT&T Communications, Inc.,* 972 F.2d 845 (7th Cir. 1992)); *see also Hal Roach Studios v. Feiner,* 896 F.2d 1524, 1550 (9th Cir. 1989)("It is well established that unauthenticated documents cannot be considered on a motion for summary judgment."). *See also Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003)("[A] party's failure to comply with summary judgment evidentiary requirements is traditionally remedied . . . by excluding the non-conforming submission . . . ."); *Moore v. Holbrook,* 2 F.3d 697, 699 (6th Cir. 1993)(if documents submitted in support of a motion for summary judgment do not satisfy the requirements of Rule 56(e), they must be disregarded). Accordingly, any documents submitted in opposition to or in support of a motion for partial summary judgment which are not properly identified by affidavit or are not otherwise admissible into evidence have been disregarded.

Ace Mortgage offers home loans, debt consolidation and mortgages to consumers in Indiana and in other states. Its services include an e-loan program available through its website in which consumers can access mortgage and mortgage approval information and apply for a loan online. Ace Mortgage is the owner of the trademark ACE MORTGAGE FUNDING®, which was registered on the Principal Register on December 2, 2003 by the United States Patent and Trademark Office, Reg. No. 2,789,685, for use in connection with mortgage lending and loan origination services.

On or about January 20, 2003, Ace Mortgage entered into an employment contract with Bradford (the "Employment Contract"). From January 2003 until December 2004, Bradford was employed by Ace Mortgage as a loan officer at its Indianapolis northside office.

During this time period, Richard Breedon ("Breedon") was the Assistant Vice President in charge of Ace Mortgage's northside office. Breedon was Bradford's immediate supervisor. Jon Kolanowski ("Kolanowski"), who owns Infinamic, Inc., has been for all relevant times Ace Mortgage's website developer.

At some time, Bradford purchased the domain name "acemortgage.com," but the actual date of such purchase is disputed.[2] During Bradford's employment, the acemortgage.com domain name was used by Ace Mortgage as the address for an Ace

---

[2]Neither party has presented evidence of the date of purchase.

Mortgage website. Ace Mortgage used acemortgage.com as a marketing tool for Ace Mortgage's services: it promoted the team of loan officers at Ace Mortgage's Indy-North office, provided information about Ace Mortgage's loan services, and provided online application forms. As Ace Mortgage's webmaster, Kolanowski developed and managed the acemortgage.com website via his company Infinamic, Inc.

Bradford had input into the content of the site, although Breedon ultimately controlled the content of the acemortgage.com website and instructed Kolanowski what to put up on the site. In addition to Bradford, Kolanowski and some personnel in Ace Mortgage's northside office had access to the passwords that permitted access to and control of the acemortgage.com domain name and associated website. The acemortgage.com site development expenses were paid for by Ace Mortgage.

Kolanowski updated the registrant information for the acemortgage.com domain name by identifying the registrant as "3850 Priority Way South Suite 200, Indianapolis, IN 46240," which is Ace Mortgage's Indy-North office address. Bradford was listed as Administrative Contact.

In November 2003, Kolanowski renewed the acemortgage.com registration with Network Solutions because the registration was about to expire. Bradford reimbursed Kolanowski the $95 fee to renew the registration. Other than this reimbursement, there is no evidence that Bradford paid for any expenses related to the acemortgage.com domain name or website during his employment.

On or about December 2, 2004, Ace Mortgage terminated Bradford's employment. Immediately after his termination, Bradford told Kolanowski to remove all of the content from the acemortgage.com website. Because he had knowledge of the password for the domain, Bradford was able to change the password needed to control access to the domain.

In January 2005, after his employment at Ace Mortgage had ended, Bradford hired Tom Dowell to put up new content at acemortgage.com and develop the site. Such content appeared to offer mortgage services. The site was titled "Ace Mortgage: Making Dreams & Building Families, One Loan at a Time." The "Company Profile" on the site said "Acemortgage.com is a great place to start looking for a mortgage. Its [sic] a website created in 2004 by a group of mortgage originators to provide a faster, better, and cheaper way for you, the customer to receive the mortgage you need at the rate you want with the ease you deserve." The site also included links to a Quick Application and a Full Application and contact information for Sales and Customer Support.

The "Company" being profiled at the site was a corporate entity that Bradford formed after his employment was terminated. The company was called Acemortgage.com. Bradford was the sole "owner" of this company, although it had no assets, no employees, and never engaged in any business of any kind. Yet the website touted it as "a great place to start looking for a mortgage." In his deposition, Bradford acknowledged that the statements on this site were false.

Later in 2005, the site claimed that "AceMortgage.com" had relationships with many lenders and "well over 1000 loan professionals throughout the United States to meet your needs." In his deposition, Bradford admitted that these statements were also false. He also suggested that information submitted to the site might have been given to a group known as "Mortgage Finders." Bradford had control over the content of the site at this time.

In January 2005, Bradford offered to sell Ace Mortgage control of the domain name for $180,000. The acemortgage.com site was modified late in 2005 to indicate that it was "Under Construction," although the Ace Mortgage heading, the declaration "Making Dreams & Building Families, One Loan at a Time," the Sales and Customer Support contact information, and the Quick and Full Application forms remained.

Section 5(h) of the Employment Contract provides that intellectual property products developed by employees will belong exclusively to Ace Mortgage. Specifically, that section provides:

> Employee agrees that any invention, enhancement, process, method, design and any other creation (hereinafter "product") that Employee may develop, invent, discover, conceive or originate, alone or in conjunction with any other person during business hours or on behalf of AMF, during the term of the Employee's employment, and for a period of one (1) year thereafter, that relates to the business of AMF now or hereafter carried on by it, or to the use of any product involved therein, shall be the exclusive property of AMF. Employee understands and agrees that in partial consideration of Employee's employment for the compensation received, and for continued employment, all such products shall be the exclusive property of AMF and thus subject to patent, copyright, registration or other legal protective custody of AMF. AMF shall have the authority and this instrument shall operate: (1) to give AMF authority to execute, sell and deliver as the act of the Employee, any license agreement, contract, assignment, or other instrument in writing that may be necessary or proper; (2) to convey to AMF the entire right, title and interest to any such product. Employee further agrees to hold AMF and it [sic] assigns harmless by reason of AMF's acts pursuant to this paragraph. Employee further agrees that, during the term of his/her employment and any time thereafter, Employee shall cooperate with AMF and its counsel in the prosecution and/or defense of any litigation which may arise in connection with any product referred to in this paragraph.

Section 5(i) of the Employment Contract also provides:

> Employee agrees to return all property of AMF, including, but not limited to equipment, prices, specifications, programs, customer and prospective customer lists, and any other proprietary data or objects acquired through Employee's employment with AMF, as well as any and all copies of such items, immediately upon termination of employment, whether said termination be with or without cause.

4

The non-compete provision of Bradford's Employment Contract with Ace Mortgage provides as follows:

> Employee also agrees that for a period of two (2) years after the termination of employment for any reason, directly or indirectly, Employee will not own, manage, operate, control, be employed by, contract with or be connected with in any manner, any competing business such that Employee, directly or indirectly, competes with AMF within Employee's territory as set forth in Exhibit A [Marion County, Indiana].

Section 6 provides that Ace Mortgage is entitled to recover its attorneys' fees incurred in the enforcement of the provisions of the Employment Contract.

### B. Conclusions of Law

Ace Mortgage asserts claims of breach of contract under Indiana law and unfair competition pursuant to the Lanham Trade-Mark Act, 15 U.S.C. § 1125.

### 1.    Breach of Contract - Provision 5(h)[3]

Ace Mortgage first argues that Bradford violated Section 5(h) of the Employment Contract. Ace Mortgage asserts that the domain name acemortgage.com is a "product" as defined in the Employment Contract, that it was obtained during his employment, that it relates to the business of Ace Mortgage, and therefore, it is the exclusive property of Ace Mortgage. The pivotal issue relative to this claim is whether the domain name was acquired "during the term of [Bradford's] employment."

Bradford testified that he purchased the domain name after he considered working at Ace Mortgage but before he was hired, sometime in late 2002. Bradford testified in his deposition that he does not know the name of the person from whom he purchased it, but it was the person who was named as the registrant of the domain name at the time. He did not recall the amount he paid, other than to estimate that it was between three and five hundred dollars. He testified that he did not recall whether he paid by check or how he paid for it and he has no documentation of the purchase itself. In his brief, Bradford *now* contends that he paid for the domain name with a particular credit card. He still, however, has provided no documentation to support this allegation.

---

[3]Bradford claims that he did not violate the non-compete provisions of the Employment Contract. Immediately after his employment was terminated, Bradford changed the content of the acemortgage.com website and subsequently incorporated ACEMORTGAGE.COM INC. Bradford argues that because his corporation was never licensed to offer loans and it never conducted any business whatsoever, he or it could not have been considered to be "competing" with Ace Mortgage. Whether or not this could constitute "indirect" competition or whether Bradford was "connected with" any other competing businesses by referring inquiries to a group known as "Mortgage Finders" are material questions of fact. To the extent Bradford seeks partial summary judgment in his favor as to the non-compete clause claim, his motion for partial summary judgment is **denied**. Ace Mortgage does not seek summary judgment as to this claim.

5

Kolanowski testified in his deposition that in February of 2003, the month after Bradford was hired, Bradford informed Kolanowski that he was interested in acquiring the acemortgage.com domain name, and Bradford asked Kolanowski to find out the identity of its registrant. Kolanowski responded with an e-mail to Bradford at his Ace Mortgage e-mail address identifying a Richard Bradley as the owner. The entire content of the February 10, 2003, email to Bradford is "hostmaster@YOURLINK.NET  Richard Bradley."

Although Bradford as the purchaser would most likely have access to evidence documenting the date he purchased the domain name, he has failed to put the issue to rest by presenting such evidence. For purposes of the motions for partial summary judgment, whether Bradford purchased the domain name during the term of his employment is a genuine issue of fact.  Accordingly, neither party is entitled to summary judgment as to this claim.

### 2. Unfair Competition

Ace Mortgage's second claim is that Bradford's post-termination use of acemortgage.com constitutes unfair competition under the Lanham Act. *See* 15 U.S.C. § 1125. Ace Mortgage argues that Bradford's use of  "Ace Mortgage" is confusingly similar to its registered mark ACE MORTGAGE FUNDING, and that use is therefore forbidden by the Lanham Act.  Ace Mortgage further argues that Bradford has violated the Lanham Act provisions concerning cyberpiracy. *See* 15 U.S.C. § 1125(d) ("Anticybersquatting Consumer Protection Act")("ACPA"). The ACPA was "intended to prevent 'cybersquatting,' an expression that has come to mean the bad faith, abusive registration and use of the distinctive trademarks of others as Internet domain names, with the intent to profit from the goodwill associated with those trademarks." *Shields v. Zuccarini*, 254 F.3d 476, 481 (3rd Cir. 2001). The ACPA provides, in part, as follows:

> (d) Cyberpiracy prevention
>
> (1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person
> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
> (ii) registers, traffics in, or uses a domain name that--
> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; . . . .

15 U.S.C. § 1125(d)(1)(A).

The ACPA provides various factors to consider in determining whether a person has a "bad faith intent" as used above. Those factors include "the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services."  15 U.S.C. § 1125(d)(1)(B)(i)(III). A finding of use in connection with the bona fide offering of services would tend to show the absence of bad faith. *Lamparello v. Falwell*, 420 F.3d 309, 319 (4th Cir. 2005).

6

Shortly after his employment at Ace Mortgage had ended, Bradford put up new content at acemortgage.com that appeared to offer mortgage services. The site was titled "Ace Mortgage: Making Dreams & Building Families, One Loan at a Time." The "Company Profile" on the site said "Acemortgage.com is a great place to start looking for a mortgage." It described itself as "a website created in 2004 by a group of mortgage originators to provide a faster, better, and cheaper way" for customers to receive mortgages. The site included links to a Quick and a Full Application and contact information for Sales and Customer Support. The website touted Acemortgage.com as "a great place to start looking for a mortgage." Later in 2005, the site claimed that "AceMortgage.com" had relationships with many lenders and over 1000 loan professionals. Although the website at acemortgage.com appeared to be offering services, Bradford admits that no such services were ever provided and inquiries that were made to the website were ignored. The offerings posted at acemortgage.com were false. Here, because the record shows that Bradford did not make a bona fide offering of goods or services through the acemortgage.com domain name, this factor concerning the issue of bad faith weighs against him.

Another statutory factor to consider in determining whether there is "bad faith intent" is "the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site." 15 U.S.C. § 1125(d)(1)(B)(i)(V). The finding of such an intent to divert consumers indicates the existence of bad faith intent to profit. *Lamparello*, 420 F.3d at 319. Whether Bradford had an "intent to divert" must be inferred from relevant facts and circumstances. *Audi AG v. D'Amato*, 469 F.3d 534, 549 (6th Cir. 2006). It is undisputed that prior to Bradford's termination, the website was used by Ace Mortgage to market the mortgage services of its northside office. Bradford took control of the website at that domain name and purported to offer the same services as Ace Mortgage. Individuals accessing the site would likely believe that the services continued to come from Ace Mortgage. Bradford did not notify the public that the services previously offered were no longer available, and that in fact, the company profiled at the website had no employees, no assets, and never conducted any business. Accordingly, an intent to divert consumers can reasonably be inferred and the likelihood is strong that the goodwill of Ace Mortgage was harmed.

In addition, "the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services. . . . " is another indicator of bad faith intent. 15 U.S.C. § 1125(d)(1)(B)(i)(VII). It is undisputed that Bradford attempted to sell the domain name to Ace Mortgage at a price that would afford him a substantial financial gain. He estimates he paid a few hundred dollars for the domain name and he tried to sell it to Ace Mortgage for well over a hundred thousand dollars. It is also undisputed that Bradford failed to use the domain name in the bona fide offering of goods or services. This factor is the clearest indicator of Bradford's bad faith intent to profit.

7

Bradford argues that Ace Mortgage is retaliating against him because he joined in a class action lawsuit against Ace Mortgage. Bradford contends the company is selectively harassing him, as he believes it has not sued any other former employees for claims such as violating the non-compete clause in their employment contracts. Bradford does not put forward any evidence in support of this contention, nor does he present any evidence that any other former employee took control of a domain name (albeit his) and website which an Ace Mortgage branch office had been using and then refused to transfer the name to the company unless he was paid a six figure dollar amount. Bradford's claim of being selectively harassed is meritless and warrants no relief.

Each of the factors discussed above indicate that Bradford's use of the domain name acemortgage.com has been with a "bad faith intent to profit." No reasonable juror could find otherwise. Because the court finds that the domain name was used in bad faith, the ACPA amendment to the Lanham Act authorizes the court to order the cancellation or transfer of the domain name to the owner of the mark. 15 U.S.C. § 1125(d)(1)(C). Ace Mortgage is entitled to summary judgment as to this claim and the court will order Bradford to transfer the domain name at issue, acemortgage.com, to Ace Mortgage.

### III. Conclusion

The motion for partial summary judgment filed by Ace Mortgage (dkt. #43) is **denied in part and granted in part** consistent with the rulings in this Entry. As to its Employment Contract provision 5(h) claim, its motion for partial summary judgment is denied because there is a genuine issue of material fact. As to the unfair competition (cybersquatting) claim asserted pursuant to the ACPA amendment to the Lanham Act, 15 U.S.C. § 1125(d), there is no genuine issue as to any material fact and Ace Mortgage is entitled to judgment as a matter of law. Bradford's motion for partial summary judgment (dkt. #46) is **denied.**

At the conclusion of this case, Bradford will be ordered to promptly **transfer the domain name at issue, acemortgage.com, to Ace Mortgage.** Costs will also be awarded to Ace Mortgage.

No partial final judgment shall issue at this time as to the claims resolved in this Entry.

Ace Mortgage shall have **fifteen (15) calendar days** in which to report whether it intends to pursue any of the remaining claims asserted in this action. If it does intend to pursue additional claims, the court will set a briefing schedule for further dispositive motions. If it does not intend to pursue any additional claims, the court will issue a final judgment consistent with the rulings in this Entry.

**IT IS SO ORDERED.**

Date: 03/10/2008

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Mary Jane Frisby
BARNES & THORNBURG
mfrisby@btlaw.com

Julia Spoor Gard
BARNES & THORNBURG LLP
jgard@btlaw.com

Brian Bradford
11539 Feather Rock Ct.
Fishers, IN 46037